# EXHIBIT A

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement ("Settlement Agreement") is entered into by and among:

Hylete, Inc., a Delaware corporation with a principal place of business at 560 Stevens Ave, Solana Beach, CA 92075 ("Hylete"), Ronald L. Wilson II, an individual ("Wilson"), and Matthew Paulson, an individual ("Paulson"), on the one hand (collectively, the "Hylete Parties"); and

Hybrid Athletics, LLC, a Connecticut limited liability company, with a principal place of business at 484 Pepper St, Monroe, CT 06468 ("Hybrid Athletics"), and Robert Orlando, an individual ("Orlando"), on the other hand (collectively, the "Hybrid Athletics Parties").

This Settlement Agreement sometimes refers to Hylete, Wilson, Paulson, Hybrid Athletics, and Orlando collectively as "the Parties," and individually as a "Party."

## RECITALS

**A.** WHEREAS, Hylete is the owner of United States Trademark Registration Nos. 5542764 and 4318646, and U.S. Trademark Application Serial Nos. 87330360 and 85837045 ("Hylete Applications and Registrations");

**B.** WHEREAS, Hylete is the owner of all right, title and interest in and to the marks shown in the Hylete Applications and Registrations for use in connection with at least all of the goods and services identified in the respective trademark applications and registrations;

**C.** WHEREAS, Hybrid Athletics is the owner of United States Trademark Registration Nos. 4609469, 4480850, and 4722185 ("Hybrid Athletics Trademarks");

**D.** WHEREAS, Hybrid Athletics is the owner of all right, title, and interest in and to the marks shown in the Hybrid Athletics Trademarks for use in connection with at least all the goods and services identified in the associated trademark registrations.

**E.** WHEREAS, Hylete, Wilson, Paulson, and Hybrid Athletics are involved in a dispute in the United States District Court, District of Connecticut in the matter captioned as *Hybrid Athletics, LLC v. Hylete, LLC* (D. Conn., Aug. 30, 2019, No. 3:17-CV-1767 (VAB)), in which Hybrid Athletics contends it was damaged and further contends that Hylete, Wilson, and Paulson were unjustly enriched as a result of alleged trademark infringement, false designations of origin, and unfair competition by the Hylete Parties, and in which Hybrid Athletics seeks to recover, among other things, all damages and attorneys' fees and costs allegedly incurred in the prosecution of its claims (the "Connecticut Action");

**F.** WHEREAS, Hylete, Hybrid Athletics, and Orlando have also been involved in a dispute in the United States District Court, Southern District of California in the matter captioned as *Hylete, Inc. v. Hybrid Athletics, LLC* (S.D. Cal., May 21, 2020, No. 3:19-CV-02494 (WQH-AGS)), which was dismissed on May 21, 2020 ("California Action");

**G.** WHEREAS, Hylete, Inc. and Hybrid Athletics are involved in a dispute before the Trademark Trial and Appeals Board, Cancellation No. 92069004, in which Hylete seeks the cancellation of Hybrid Athletics' trademark Registration No. 4,609,469 ("the Cancellation");

**H.** WHEREAS, the Parties desire to reduce the expense and uncertainty of litigating any claims and have determined to resolve their disputes as set forth in this Settlement Agreement and thereby wish to release each other from any claims; and

**I.** WHEREAS, as of the effective date of this Settlement Agreement, the Parties are duly authorized to approve this Settlement Agreement, on the terms and subject to the conditions set forth in this Settlement Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, covenants and releases herein contained, the sufficiency and receipt of which are hereby acknowledged, without admitting any liability on any allegation, claim or counterclaim or any other wrongdoing whatsoever, the Parties, intending to be legally bound hereby, agree as follows:

**Section 1.   Dismissal of Litigation.**

1.1   Within ten (10) days of the last of the Parties executing this Settlement Agreement, the Parties shall dismiss the claims and counterclaims against each other in the Connecticut Action and the Cancellation, with prejudice.

**Section 2.   Releases**

2.1   Release by the Hybrid Athletics Parties.  Except for any rights or claims created or reserved by this Settlement Agreement, the Hybrid Athletics Parties release the Hylete Parties and their employees, officers, directors, attorneys, agents, customers, subsidiaries, predecessors, successors and assigns from any and all causes of actions, suits, proceedings, debts, contracts, judgments, damages, costs, claims and demands of any kind and nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to its claims and counterclaims in the Connecticut Action, the California Action, and the Cancellation.

2.2   Release by the Hylete Parties.  Except for any rights or claims created or reserved by this Settlement Agreement, the Hylete Parties release the Hybrid Athletics Parties and their employees, officers, directors, attorneys, agents, customers, subsidiaries, predecessors, successors and assigns from any and all causes of actions, suits, proceedings, debts, contracts, judgments, damages, costs, claims and demands of any kind and nature, at law, in equity, or otherwise, known and unknown, disclosed and undisclosed, relating in any way to its claims and counterclaims in the Connecticut Action, the California Action, and the Cancellation.

2.3   California Civil Code section 1542 Waiver.  The Parties acknowledge that they are aware of and familiar with the provisions of Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and

that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." The Parties hereby waive and relinquish all rights and benefits that they may have under Section 1542 of the California Civil Code, or the law of any other state or jurisdiction, or common law principle, to the same or similar effect. This waiver is not a mere recital but is a knowing waiver of the rights and benefits otherwise available to the Parties under this section.

**Section 3.**      **Payments and Other Consideration.**

       3.1      Upfront Payment.  In consideration for the promises, covenants, and releases by the Hybrid Athletics Parties, within five (5) business days of execution of the Settlement Agreement, Hylete shall pay, or cause to be paid, a one-time payment of One Million Dollars ($1,000,000.00 USD) to Hybrid Athletics.

       3.2      Future Payments.  In further consideration for the promises, covenants, and releases by the Hybrid Athletics Parties, starting no earlier than 2021, Hylete shall pay, or cause to be paid, a total sum of One Hundred Thousand Dollars ($100,000.00 USD) which sum shall be made in four annual installments of Twenty Five Thousand Dollars ($25,000.00 USD) each, to Orlando, on November 1, 2021, November 1, 2022, November 1, 2023, and November 1, 2024.

              3.2.1   If Hylete fails to make any payment in paragraph 3.2 on its scheduled due date and fails to cure within thirty (30) days, then all remaining scheduled payments in paragraph 3.2 shall immediately become due and a late interest charge, based upon an annual interest rate of eighteen percent (18%), shall begin to accrue immediately on the total remaining sum owed.

       3.3      Other Consideration.  In further consideration for the promises, covenants, and releases by the Hybrid Athletics Parties, Hylete shall issue to Orlando a Stock Purchase Warrant in the form attached as Exhibit "A" hereto for 950,000 shares of Class A Common Stock of Hylete, which the Hylete Parties represent constitutes approximately two point three percent (2.3%) of Hylete's issued and outstanding shares as of the Effective Date.

**Section 4.**      **Covenant Not to Sue or Challenge.**

       4.1      The Hybrid Athletics Parties and their representatives, agents and assigns covenant not to bring, file, claim, sue or cause, assist, or permit to be brought, filed, or claimed, any action, cause of action or proceeding against the Hylete Parties or their employees, officers, directors, attorneys, agents, customers, subsidiaries, predecessors, successors and assigns, regarding or in any way related to any of the claims asserted in the Connecticut Action, the California Action, and the Cancellation, including, but not limited to, any cause of action based on or involving trademark infringement, unfair competition, or false advertising, under state or federal law with respect to the trademarks in the Hylete Applications and Registrations or the Hybrid Athletics Trademarks.  The Parties agree that this covenant will constitute and may be pleaded as, a bar to any such claim, action, cause of action or proceeding. Notwithstanding anything to the contrary, the Hybrid Athletics Parties shall not be prohibited from responding to any validly issued subpoena for discovery or testimony in an action brought by a third party.

       4.2      The Hybrid Athletics Parties, their representatives, agents and assigns agree not to challenge any existing trademark registrations or applications owned by any of the Hylete Parties

or their subsidiaries, successors and assigns, or assist any individual or entity to challenge any such registrations or applications. The Parties agree that this covenant, will constitute and may be pleaded as, a bar to any efforts to challenge any such trademark registrations or applications. Notwithstanding anything to the contrary, the Hybrid Athletics Parties shall not be prohibited from responding to any validly issued subpoena for discovery or testimony in an action brought by a third party.

   4.3  The Hylete Parties and their representatives, agents, and assigns covenant not to bring, file, claim, sue or cause, assist, or permit to be brought, filed, or claimed, any action, cause of action, or proceeding against the Hybrid Athletics Parties or their employees, officers, directors, attorneys, agents, customers, subsidiaries, predecessors, successors and assigns, regarding or in any way related to any of the claims asserted in the Connecticut Action, the California Action, and the Cancellation, including, but not limited to, any cause of action based on or involving trademark infringement, unfair competition, or false advertising, under state or federal law with respect to the trademarks in the Hylete Applications and Registrations or the Hybrid Athletics Trademarks. The Parties agree that this covenant will constitute and may be pleaded as, a bar to any such claim, action, cause of action or proceeding. Notwithstanding anything to the contrary, the Hylete Parties shall not be prohibited from responding to any validly issued subpoena for discovery or testimony in an action brought by a third party.

   4.4  The Hylete Parties, their representatives, agents, and assigns agree not to challenge any existing trademark registrations or applications owned by any of the Hybrid Athletics Parties or their subsidiaries, successors and assigns, or assist any individual or entity to challenge any such registrations or applications. The Parties agree that this covenant, will constitute and may be pleaded as, a bar to any efforts to challenge any such trademark registrations or applications. Notwithstanding anything to the contrary, the Hylete Parties shall not be prohibited from responding to any validly issued subpoena for discovery or testimony in an action brought by a third party.

**Section 5.**  **Mutual Non-Disparagement.**

   5.1  Neither Party, nor their respective agents, affiliates, or representatives shall directly or indirectly make false or misleading representations regarding, or otherwise disparaging or degrading, the other Party, its agents, affiliates, or representatives, or its businesses, products, services, intellectual property, or activities.

**Section 6.**  **No Admissions of Liability.**

   6.1  The promises, covenants, and releases and other terms set forth in this Settlement Agreement are the result of a compromise, and shall never, at any time, for any purpose, be considered an admission of any liability, claim, or contention of any Party against the other Party hereto or of liability or responsibility on the part of any of the Parties, who continue to deny such liability and to disclaim such responsibility.

**Section 7.**  **Confidentiality**

   7.1  The Parties acknowledge and agree that the mere existence of this Settlement Agreement and the identification of the Parties is not confidential. The Parties expressly

understand and agree that the specific terms of this Settlement Agreement, including but not limited to, the fact of any payments being made and the amounts to be paid or other compensation hereunder, shall remain confidential and shall not be disclosed by any Party except: (a) as may be required by applicable law; (b) as may be required by judicial or governmental order or rule; (c) as may be required by GAAP and/or SEC reporting requirements; (d) in confidence to a Party's accountants, tax advisors, auditors and/or attorneys for purposes of seeking professional services; (e) by written consent of the other Party and under terms of confidentiality; and/or (f) as may be used by the Parties to enforce the terms of this Settlement Agreement.

**Section 8.     Full Settlement.**

8.1     The Parties acknowledge that the mutual promises, covenants, and releases, and all other terms under this Settlement Agreement are in full and complete satisfaction of all claims, rights, and other remedies sought or available to the parties in the Connecticut Action, the California Action, and the Cancellation, including any claim for attorneys' fees and costs as a prevailing party. For the avoidance of doubt, each Party is to bear their own attorneys' fees and costs in the Connecticut Action, the California Action, and the Cancellation, including any fees and costs incurred in executing this Settlement Agreement.

8.2     The Parties acknowledge that the mutual promises, covenants, and releases, and all other terms under this Settlement Agreement shall apply globally around the world and are not limited to the United States.

**Section 9.     Representations.**

9.1     No Breach of Other Agreements.  The Parties represent and warrant that by entering into this Settlement Agreement, they are not in breach of the terms of any other agreement to which any of them is a party, and that the terms of this Settlement Agreement do not breach any obligations that any of them owes to any third party.

9.2     Authority.  Each Party represents and warrants that it/he has full right, power, and authority to (a) enter into this Settlement Agreement, and (b) bind it/him to the terms of this Settlement Agreement.  Each Party also covenants that it/he will obtain, maintain, and exercise all rights necessary to bind any parties that becomes affiliated after the effective date to all applicable terms of this Settlement Agreement.

**Section 10.     Miscellaneous.**

10.1     Legal Representation.  The Parties acknowledge that they have been represented by counsel of their choosing, who have advised them throughout the negotiations and in connection with the execution of this Settlement Agreement.

10.2     Independent Reliance.  No Party, or any officer, director, agent, representative, or attorney for any Party has made any statement or representation to the other Party regarding any fact relied upon in entering into this Settlement Agreement, and no Party has relied upon any statement, representation, or promises of the other Party in executing this Settlement Agreement, except as expressly stated in this Settlement Agreement.

10.3    Authority to Execute.  The Parties, and each of them, acknowledge that they have full authority to execute and to enter into this Settlement Agreement, covenants, and releases contained herein, and all other agreements and documents contemplated hereby.

10.4    Notices.  If a Party believes that another Party has breached this Settlement Agreement, the breaching Party must be given notice of the alleged breach and a reasonable time, not to exceed thirty (30) days time from the date of receipt of such notice, in which to cure said breach.  All notices, requests, demands or other communications under or related to this Settlement Agreement shall be made in writing and shall be made and will be effective upon delivery.

Notices to the Hylete Parties shall be sent to:

Adam Colton, CFO
Hylete, Inc.
560 Stevens Ave, Solana Beach, CA 92075
acolton@hylete.com

Copies of Notices to the Hylete Parties shall be sent to:

Dave Deonarine / Nicholas S. Kawuka
Procopio, Cory, Hargreaves & Savitch LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
dave.deonarine@procopio.com
nicholas.kawuka@procopio.com

Notices to the Hybrid Athletics Parties shall be sent to:

Robert Orlando
8 Saddle Hill Road
Monroe, CT 06468

Copies of Notices to the Hybrid Athletics Parties shall be sent to:

Michael J. Kosma
Whitmyer IP Group
600 Summer Street
Stamford, CT 06901

10.5    Attorneys' Fees in Subsequent Litigation.  In the event that any action shall be instituted by any Party for the enforcement of any of its rights in and under this Settlement Agreement, the prevailing Party shall be entitled to recover from the other Party all costs and reasonable attorneys' fees incurred by said prevailing Party in said action.

10.6    Benefit to Agents, Successors, etc.  Except as expressly provided or reserved in this Settlement Agreement, this agreement shall be binding upon, inure to the benefit of, and be enforceable by, the Parties hereto and their parent and subsidiary corporations, officers, directors,

agents, employees, representatives, attorneys, trustees, shareholders, transferees, predecessors, successors and/or assigns, and all persons claiming by or through such respective Parties.

   10.7 <u>Further Assurances</u>.  Each Party to this Settlement Agreement agrees to cooperate in a timely manner with the other Party to carry out the purpose and effect of this Settlement Agreement including, without limitation, execution, notarization, delivery, and recordation of any instruments, documents, and things as may reasonably be requested to effectuate the terms and conditions of this Settlement Agreement.

   10.8 <u>Binding Agreement</u>.  The consideration for this Settlement Agreement is and shall be the mutual promises, covenants, and releases contained herein.  The Parties acknowledge the terms of this Settlement Agreement are contractual and not a mere recital.

   10.9 <u>Severability</u>.  If any portion, part or provision of this Settlement Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void, for any reason whatsoever, each such portion, part, or provision shall be severed from the remaining portions, parts, or provisions of this Settlement Agreement, and shall not affect the validity or enforceability of such remaining portions, parts, or provisions.

   10.10 <u>Construction</u>.  Each Party has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any Party.

   10.11 <u>Titles and Headings</u>.  Titles and headings of sections of this Settlement Agreement are for convenience of reference only, and shall not affect the construction of any provision of this Settlement Agreement.

   10.12 <u>Counterparts.</u>  This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement, which shall be binding upon and effective as to all Parties.

   10.13 <u>Entire Agreement, Modifications and Waiver</u>.  This Settlement Agreement: (a) is intended to be and is final and binding among the Parties; (b) contains all the understandings and the entire agreement between the Parties respecting the matters set forth herein; and (c) supersedes all prior negotiations and agreements between the Parties with respect to the matters addressed in this Settlement Agreement.  The recitals set forth at the beginning of this Settlement Agreement are incorporated by reference and made a part of this Settlement Agreement.  Furthermore, this Settlement Agreement shall not be modified except by a written agreement signed by the Party or an authorized representative of the Party against whom such modification is sought to be enforced.  Failure by any Party to enforce any provision of this Settlement Agreement shall not be deemed a waiver of future enforcement of that provision.

   10.14 <u>Governing Law and Choice of Forum.</u>  The Parties agree that this Settlement Agreement is made and entered into within and shall be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Connecticut without regard to the principles of conflicts of laws.  Any action to enforce this Settlement Agreement, or to address any claim or dispute arising from or related to the matters addressed in this Settlement Agreement, shall be

brought only in Connecticut Superior Court or in the United States District Court for the District of Connecticut.

   10.15 <u>Term and Termination</u>.  The term of this Settlement Agreement shall commence on the effective date referenced herein, and shall continue in perpetuity.

   10.16 <u>Effective Date</u>.  This Settlement Agreement, and each of the terms set forth herein, shall become effective and binding on each Party on the date of execution by the last of the Parties ("Effective Date").

**<u>THE HYLETE PARTIES</u>**

|  |  |
|---|---|
| | **HYLETE, INC.** |
| DATED: December 11, 2020 | *James Caccavo* _____ |
| | James Caccavo |
| | Chief Executive Officer |
| DATED: December 11, 2020 | *Ron Wilson* _____ |
| | Ronald E. Wilson II |
| DATED: December 11, 2020 | *Matt Paulson* _____ |
| | Matthew Paulson |

**<u>THE HYBRID ATHLETICS PARTIES</u>**

|  |  |
|---|---|
| | **HYBRID ATHLETICS, LLC.** |
| DATED: December 11, 2020 | *Robert M Orlando* _____ |
| | Robert Orlando |
| | Owner |
| DATED: December 11, 2020 | *Robert M Orlando* _____ |
| | Robert Orlando |

Page 8 of 8